Mary RORK, Appellant (Plaintiff below),

v.

SZABO FOODS, Appellee (Defendant below).

No. 682S219.

Supreme Court of Indiana.

Sept. 30, 1982.

Richard L. Russell, Rodney V. Shrock, Bayliff Harrigan Cord Maugans & Russell, P. C., Kokomo, for appellant.

David A. Steckbeck, Richard A. Mann, Steckbeck, Moore & Cohen, Indianapolis, for appellee.

ON PETITION TO TRANSFER

HUNTER, Justice.

This cause was brought before this Court on the petition to transfer of Mary Rork, wherein she sought review of the Court of Appeals' opinion found at *Rork v. Szabo Foods,* (1981) Ind.App., 426 N.E.2d 1379. We have previously granted transfer, vacated the opinion of the Court of Appeals, and remanded the cause to the Full Industrial Board of Indiana with instructions for the Board to enter the specific findings of issuable facts upon which its decision was based. *Rork v. Szabo Foods,* (1982) Ind., 436 N.E.2d 64.

Rork was injured in the course of her employment with Szabo Foods when she fell while leaving work on April 22, 1977. Rork and Szabo Foods disagreed on the questions of liability and compensation for her injuries, prompting Rork to file a claim for workmen's compensation.

In her claim, Rork alleged she had sustained a "severe ankle sprain, injury to back vertebrae, and related complications diagnoses [sic] as throiditis and softening of bone in the back vertebrae." She alleged that on several occasions, she had attempted to return to work, but that continuing pain rendered her unable to fulfill her employment duties. She sought compensation for total temporary disability, permanent total disability, and permanent partial impairment.

A hearing was conducted before a single member of the Industrial Board. Ind. Code § 22–3–4–6 (Burns 1974). There, the parties stipulated to the following matters, as summarized by the hearing officer:

"The parties stipulated and agreed that on or about April 22, 1977, plaintiff was in the employ of the defendant at an average weekly wage of $154.40, and that on said date plaintiff suffered an accidental injury arising out of and in the course of her employment with the defendant. It was further stipulated that thereafter the defendant did pay to the plaintiff 36.568 weeks of compensation at the rate of $102.92 per week for her intermittent temporary total disability up to and including March 13, 1978. The parties further agreed that the depositions of Doctors Smith, Rettig, Halfast and two depositions of Dr. Higgins are to be considered as the medical evidence in this cause."

Based on the evidence presented and the arguments of the parties, the hearing officer concluded Rork had suffered "perma-

nent partial impairment equal to 10% of the body as a whole" and awarded her fifty weeks of compensation at the rate of $60 per week; the hearing officer also found that Szabo Foods was entitled to set-off in the amount of $102.92 per week for a period of 10.568 weeks "for temporary total disability payments paid beyond the statutory 26 weeks."

Rork then appealed the award to the Full Industrial Board. Following a hearing, the Board affirmed the award as entered by the hearing officer; to support its decision, it adopted verbatim the findings of basic fact which the hearing officer had entered.

As explained, we held those findings were inadequate to reveal the Board's determination of the various sub-issues and factual disputes which, in their sum, were dispositive of Rork's claim. *Rork v. Szabo Foods, supra; see generally, Perez v. United States Steel Corp.,* (1981) Ind., 426 N.E.2d 29. We remanded the cause to the Board with instructions to correct the inadequacy. In response, the Board has submitted "Additional Findings of Fact," which read as follows:

"Comes now the Full Industrial Board, and pursuant to order of Court certifies the following additional Findings of Fact:

"It is further found that the plaintiff since 1972 missed the following periods of employment, and during which time she was hospitalized, to-wit: 12–4–72 to 12–10–72; 7–5–73 to 7–17–73; 5–14–74 to 5–31–74; 1–26–75 to 1–30–75, and that she was thereafter paid 28 weeks of disability for the period 7–22–75 to 2–1–76 for spinal problems.

"It is further found that upon examination by plaintiff's family physician, Jack W. Higgins, M.D., on 5–12–77, 5–27–77, 6–10–77 and 7–29–77, that it was upon the last mentioned date, to-wit: 7–29–77, that plaintiff first made complaints of back pain.

"It is further found that the plaintiff subsequently advised physicians of back pain existing from the date of the accident but that this fact is found not to be true based on the lack of objective medical history made contemporaneous with the event in question.

"It is further found that on 9–30–77 plaintiff had some evidence of a soft tissue injury of the right ankle and some diffuse tenderness in the back which was nonspecific, and no significant limitation of motion of any of her joints.

"It is further found that on said date there was a significant kyphotic deformity of the thoracic spine which predated the accidental injury herein.

"It is further found that the degenerative changes of the thoracic spine with osteoporosis which existed on September 30, 1977 were not causally connected to the accidental injury.

"It is further found that on 10–13–77 plaintiff had indication of hypertrophic arthritis of the thoracic and lumbar spines, which the Board finds preexisted the accidental injury.

"It is further found that x-rays taken in 1975 also indicated a rotary scoliosis.

"It is further found that comparison x-rays made in 1975, 1978 and 1980 show that the degree of osteoarthritic change is minimal and no more than the normal course of the disease process progression.

"It is further found that in August of 1978 that her range of motion of flection and extension were reasonably within normal range and that lateral and rotary bending mobility was normal.

"It is further found that at such time there was no evidence of spasm, list or tilt of the spine of an abnormal nature, and that her ankle mobility was essentially equal in both extremities.

"It is further found that based on the orthopedic examination, which examination realized that plaintiff was suffering pain but which pain was not capable of producing objective limitation of motion, that the plaintiff was not unable to perform a reasonable job.

"It is further found that if there is significant amount of pain there will usually be tightness in the muscle and a normal range of motion in either passive or active movement.

"It is further found that upon examination in January of '79, plaintiff's family physician found that although plaintiff spoke about back pain that there were no objective findings with her back pain and that she had good strength of her lower legs.

"It is further found that the testimony of Dr. Anthony Alexander Smith, M.D. is predicated upon a history that immediately following the sprained ankle she started having back problems at multiple levels including the neck with pain into the arms, pain between the shoulder blades and pain in the low back with extension of the left hip and leg, and that plaintiff seemed to have a good work record prior to the injury.

"It is further found that Dr. Smith was of the impression that plaintiff was told not to stand or walk for a period of 97 days.

"It is further found that Dr. Smith testified on cross-examination that the report of back or neck pain on July 29th after the accident would disturb him.

"It is further found that plaintiff was the first patient to which Dr. Smith had ever assigned an impairment or disability rating.

"It is further found that the stipulated accidental injury resolved itself and that plaintiff's back problems were not exacerbated by the stipulated industrial accident, that plaintiff's back problems were preexisting, and the Board finds that such back problems were not within a reasonable degree of medical certainty connected to the stipulated industrial accident.

"It is further found that plaintiff currently suffers a 20% permanent partial impairment of the body as a whole of which 10% is causally connected to the stipulated industrial accident.

"It is further found that plaintiff failed to demonstrate her lack of educational ability such as would preclude her from performing a job within her physical limitations.

"It is further found that plaintiff has failed to negate the possibility of employment given her present physical limitations.

"It is further found that the single Hearing Member who heard this case observed the plaintiff during her testimony, and that based upon all the evidence in this cause, he was unable to conclude that plaintiff was permanently and totally disabled within the meaning of the law."

These findings of issuable fact embody the specificity necessary to permit informed judicial review.[1] The statements reflect the Board's assessment of the facts and sub-issues relevant to the causal connection between Rork's preexisting affliction or condition, her work-related injury, and her subsequent medical status. Inasmuch as the findings are adequate to permit review, we turn to the merits of Rork's substantive contentions:

1. Whether the evidence is sufficient to support the conclusion that she sustained only ten percent permanent partial impairment; and

2. Whether the evidence is sufficient to support the conclusion that she did not suffer permanent total disability.

## I.

 Rork, as claimant, bore the burden of establishing the existence of her claimed permanent partial impairment. *Perez v. United States Steel Corp.*, (1981) Ind., 428 N.E.2d 212. In our review of the Board's disposition of her claim, this Court does not weigh the evidence or judge the credibility of witnesses. Rather, we examine the record to determine if there is substantial evidence and reasonable inferences therefrom to support the Board's findings and conclusions. Only if the evidence is of a character that reasonable men would be compelled to reach a conclusion contrary to the decision of the Board will it be disturbed. *Talas v.*

---

1. We reiterate our suggestion in *Perez v. United States Steel Corp., supra,* that the Industrial Board number sequentially its findings of fact to facilitate the parties' ability to reference courts of review to the focal points of their claimed errors.

*Correct Piping Co.,* (1982) Ind., 435 N.E.2d 22; *Penn-Dixie Steel Corp. v. Savage,* (1979) Ind.App., 390 N.E.2d 203.

 "Impairment," as the word is utilized in the Workmen's Compensation Act, constitutes a term of art; it connotes the injured employee's loss of physical functions. *Talas v. Correct Piping Co., supra; Perez v. United States Steel Corp.,* (1977) 172 Ind.App. 242, 359 N.E.2d 925; Small, *Workmen's Compensation Law of Indiana* § 9.5, p. 245-7 (1950). As we have previously acknowledged, in view of Rork's preexisting affliction with osteoarthritis, osteoporosis, and other related medical problems, her claim for permanent partial impairment fell within the purview of Ind. Code § 22-3-3-12 (Burns 1974). *Rork v. Szabo Foods, supra.* The statute reads in pertinent part:

> "If an employee has sustained a permanent injury either in another employment, or from other cause or causes than the employment in which he received a subsequent permanent injury by accident, such as specified in section 31, he shall be entitled to compensation for the subsequent permanent injury in the same amount as if the previous injury had not occurred: Provided, however, That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, *regardless of the source or cause of such previously sustained injury or physical condition,* the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury, and shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury." (Emphasis supplied; footnote omitted.)

For obvious reasons, Section 12 is sometimes characterized as the "apportionment" statute. *Noblesville Casting Div. of TRW, Inc. v. Prince,* (1982) Ind., 438 N.E.2d 722; *Goodman v. Olin Matheison Chemical Corp.,* (1977) 174 Ind.App. 396, 367 N.E.2d 1140. Where a physical impairment or disability preexists a compensable injury and is aggravated or exacerbated thereby, workmen's compensation benefits are awarded for the increased impairment or disability which is attributable to the work-related injury. *Id.*

 Rork's claim of impairment is based in large part on the limitations which recurring and intense pain allegedly places on her ability to function physically. Both Rork and her husband testified the arthritis and related spinal problems which she suffered prior to the work-related accident were severely aggravated after her fall. They testified, for instance, that she is no longer able to lift objects, do simple housework, or even ride long distances in an automobile.

Conflicting medical testimony appears in the record, however. Dr. Jack Higgins, who had been Rork's family doctor for the twelve years prior to the accident, testified that he had no doubt the work-related accident had aggravated Rork's osteoarthritis; he did not quantify the extent to which he believed the fall had exacerbated the existing condition, however. Similar testimony was elicited from Dr. Richard Halfast, an orthopedic surgeon who had examined Rork after her fall. Dr. Arthur Rettig, also an orthopedic surgeon, estimated Rork's post-accident impairment at fifteen percent of the person as a whole; he attributed only twenty percent of that total impairment to Rork's fall, however. Finally, Dr. Anthony Smith, a neurologist, estimated that Rork's post-accident impairment was "100%," a condition precipitated by the fall. In the face of this conflicting testimony, which included the doctors' assessments of pain as an impairment factor and their individual explanations of the bases for their opinions, Rork's challenge to the Board's ultimate conclusion constitutes an invitation to reweigh the evidence. That is not our prerogative. *Talas v. Correct Piping Co., supra.* The Board's conclusion that Rork sustained ten percent permanent partial impairment as a result of the work-related

accident will not be disturbed. *Compare, Noblesville Casting Div. of TRW, Inc. v. Prince, supra; Goodman v. Olin Matheison Chemical Corp., supra; Anton v. Anton Interiors, Inc.,* (1977) 173 Ind.App. 419, 363 N.E.2d 1286.

## II.

█ Rork also maintains the evidence does not support the conclusion that she does not suffer permanent total disability. Like "impairment," the term "disability" is a word of art under our Workmen's Compensation Act; it connotes the injured employee's inability to work. *Talas v. Correct Piping Co., supra.* We explained the proof necessary to establish the existence of permanent total disability in *Perez v. United States Steel Corp., supra:*

"To establish a 'permanent total disability,' the workman is required to prove he or she 'cannot carry on reasonable types of employment.' *Id.* The 'reasonableness' of the workman's opportunities are to be assessed 'by his physical and mental fitness for them and by their availability.' *Id.*"

*Id.,* 426 N.E.2d at 31, quoting *Perez v. United States Steel Corp.,* (1977) 172 Ind. App. 242, 245–6, 359 N.E.2d 925, 927–8. *See also,* Small, *Workmen's Compensation Law of Indiana* § 9.4 p. 244 (1950).

█ To support her contention that the evidence establishes she is permanently totally disabled, she relies on Dr. Smith's testimony that she suffers a "100% impairment and total disability which is likely to be a permanent total disability with respect to pursuing gainful employment." Smith, a neurologist, based his opinion on neurological impairment due to pain. Rork maintains that inasmuch as no other neurological expert testified and rebutted this evidence, it "conclusively establishes" the existence of her permanent total disability.

We disagree. It is well settled that the factfinder is free to accept or reject expert opinion testimony. *Noblesville Casting Div. of TRW, Inc. v. Prince, supra; White v. Crow,* (1964) 245 Ind. 276, 198 N.E.2d 222. Just as the Board rejected Smith's conclu-

sion that Rork had suffered "100% impairment," so also it apparently rejected Smith's disability rating.

Dr. Halfast testified that although Rork might at times suffer some discomfort, he found no reason why she could not perform a reasonable job. He explained that his opinion that Rork was not totally disabled was based on a lack of physical limitations. He stated that when he had examined Rork, he had found that her range of motion within joints and muscles was within "normal" limits; only when extreme ranges of motion were imposed on her did she complain of pain. It was his conclusion Rork's condition would best be served if she remained physically active. Generally corroborative of Halfast's opinion was Dr. Rettig's conclusion that Rork suffered only a fifteen percent impairment of the person as a whole.

In the face of this evidence, together with a lack of any evidence to establish the general unavailability of employment opportunities suited to Rork's condition, the Board's conclusion that Rork was not permanently totally disabled must be affirmed. *Perez v. United States Steel Corp., supra.* To reach a contrary conclusion would require that we reweigh the evidence and judge the credibility of witnesses, a prerogative not available to us. *Talas v. Correct Piping Co., supra.*

For all the foregoing reasons, the award of the Full Industrial Board is affirmed.

Award affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.