**INDIANA INSURANCE GUARANTY AS-SOCIATION, Defendant–Appellant,**

v.

**WILLIAM TELL WOODCRAFTERS, INC., Ulrich Chemical, Inc., and Monon Corporation, Individually and as Representatives of a Class, Plaintiffs–Appellees.**

No. 41A01–8712–CV–304.

Court of Appeals of Indiana, First District.

July 25, 1988.

Rehearing Denied Sept. 19, 1988.

David J. Mallon, Jr., Kathleen K. Shortridge, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellant.

Henry J. Price, Jerry A. Garau, Price & DeLaney, Indianapolis, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Indiana Insurance Guaranty Association (the Association), appeals from a judgment rendered by the Johnson Circuit Court in favor of plaintiff-appellees, William Tell Woodcrafters, Inc., Ulrich Chemical, Inc., and Monon Corporation (the Employers), on their suit for declaratory relief.

We reverse.

## STATEMENT OF THE FACTS

This cause was brought as a class action to determine the proper interpretation of a section of the Indiana Insurance Guaranty Association Law as it relates to claims for permanent partial impairment benefits (PPI Benefits) under the Indiana Workmen's Compensation Act. The Association has refused to pay PPI Benefit claims and the Employers brought this action to compel payment of such.

The Association is a non-profit, unincorporated legal entity created by and operating under the authority of the Insurance Guaranty Association Law, IND. CODE 27-6-8-1 to -8-19. It was created to provide a mechanism for the payment of claims under certain insurance policies to avoid loss to claimants and delay in paying claims due to the insolvency of an insurer, and to assist in the detection and prevention of insolvency in the insurance industry. The act applies to workmen's compensation insurance, as well as other kinds of direct insurance.

The Association exercises its power through a board of directors and it operates the guaranty fund. The guaranty fund is funded by assessments on member insurance companies. An insurance company cannot transact business in Indiana without being a member of the Association. Pursuant to the act, the Association, among other duties, investigates, adjusts, compromises, and pays claims that would otherwise be paid by insurers who have become insolvent. The Association allocates claims paid and expenses incurred among three separate accounts, one of which is the workmen's compensation insurance account, and assesses member insurers the amounts necessary to pay the Association's obligations.

The plaintiffs are corporations or companies who were required to obtain workmen's compensation insurance to protect employees who sustain injuries under IND. CODE 22-3-2-2. The plaintiffs employ or employed individuals who sustained injuries resulting in entitlements to PPI Benefits under the Workmen's Compensation Act at a time during which their workmen's compensation insurance carriers became insolvent. The plaintiffs consist of two subclasses. Subclass A includes employers who have paid the PPI claims to which their employees have established an entitle-

ment under the Workmen's Compensation Act. Subclass B includes employers who have not yet paid PPI claims because their employees have not yet established an entitlement to such benefits, or if so established, have not secured payment from their employers. The employers applied to the Association for payment of the PPI claims. Acting in good faith, however, the Association refused to pay any claims for PPI Benefits which have been or will be awarded under the Workmen's Compensation Act, arguing that certain limitations set forth in IND. CODE 27–6–8–7(a)(i)(1)[1] preclude it from paying such claims.

On June 12, 1986, the Employers brought suit against the Association, seeking to have the trial court enter a declaratory judgment requiring the Association to pay PPI Benefits to their employees who have been or will be deemed to be permanently partially impaired and are entitled to PPI Benefits now or in the future. The Employers also sought to be reimbursed for the PPI Benefits they paid due to the Association's refusal to pay such. All of the above facts were stipulated, and the case was submitted to the trial court upon the stipulated facts and briefs of the parties. On July 25, 1987, the trial court found for the Employers and against the Association on all counts, determining that the Association was not precluded from paying PPI Benefits. The Association subsequently instituted this appeal.

## ISSUE

The Association presents two issues on appeal. Because we reverse, the only issue which we need address is whether the Association is required to pay claims for PPI Benefits awarded pursuant to the Workmen's Compensation Act for injuries arising from bodily injury, sickness, or disease.

## DISCUSSION AND DECISION

The Association may pay only those claims which it is authorized to pay, and it

is required to deny all other claims. IND. CODE 27–6–8–7(a)(iv). Before coverage can be extended to any claimant, he must clearly demonstrate that he is a member of the class for whose benefit the Association was established. *Indiana Insurance Guaranty Association v. Kiner* (1987), Ind.App., 503 N.E.2d 923. The burden is upon the claimant to show that he has met the requirements of the guaranty law and has complied with any conditions precedent. *Id.*

The guaranty law first requires that a claimant establish that he has a covered claim before he may recover from the Association. A covered claim includes unpaid claims or judgments that are within the coverage of the insolvent insurer's policy. IND. CODE 27–6–8–4(4). However, a covered claim has various limitations. For example, only claims by a resident of Indiana or claims against an insured that is a resident of Indiana are covered. In addition, the limitations set forth in IND. CODE 27–6–8–7 apply.

The parties stipulated that the workmen's compensation claims involved in this case are claims arising from bodily injury, sickness, or disease. Thus, the limitations found in IND. CODE 27–6–8–7 pertain to such claims. In pertinent part that section states:

(a) The association shall:

(i) Be obligated to the extent of the covered claims as defined herein existing at the time of the determination of insolvency or arising within thirty [30] days after the determination of insolvency, or before the policy expiration date if less than thirty [30] days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty [30] days of the determination. This obligation shall include only that amount of each covered claim which is in excess of one hundred dollars [$100] and is less than fifty thou-

---

1. The 1988 legislature amended the guaranty law by Senate Enrolled Act 378. Senate Enrolled Act 378 amended IND. CODE 27–6–8–7(a)(i)(1) to except from that section's limitations claims under IND. CODE 22–3 and other similar state or federal laws providing benefits for occupational injury or disease. Unless otherwise noted, all statutory references refer to the guaranty law of 1971 without the 1988 amendments.

sand dollars [$50,000]. In no event shall the association be obligated to a policy-holder or claimant in an amount in excess of the applicable limits provided in the policy from which the claim arises; nor shall the association be obligated in an amount in excess of one hundred thousand dollars [$100,000] for all claims arising out of a single occurrence, nor in an amount in excess of five hundred dollars [$500] on any unearned premium claim.

(1) In the case of claims arising from bodily injury, sickness, or disease, including death resulting therefrom, the amount for which the association shall be obligated shall not exceed the claimant's reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, and any amounts actually lost by reason of claimant's inability to work and earn wages or salary or their equivalent that would otherwise have been earned in the normal course of such injured claimant's employment, to which may be added at the discretion of the association a sum not to exceed one thousand dollars [$1,000] for all other cost and expense incurred by the claimant prior to the insolvency.

Thus, the Association's obligation to pay claims arising from bodily injury, sickness, or disease is limited to reasonable medical and hospital expenses and amounts actually lost by reason of a claimant's inability to work. The Association asserts, however, that PPI Benefits under the Workmen's Compensation Act are not paid by reason of a claimant's inability to work and earn wages. Rather, PPI Benefits are paid to compensate the claimant for a loss of physical function. Because PPI Benefits are paid without regard to the claimant's inability to work, the Association maintains that it is precluded from paying such claims presented to it.

■ In order to make a proper determination in this case it is necessary to understand the scheme of compensation under the Workmen's Compensation Act. Critical to this understanding is a recognition that the terms impairment and disability are different and distinct concepts. Disability refers to the injured employee's inability to work. Impairment, on the other hand, refers to the injured employee's total or partial loss of physical function. *Talas v. Correct Piping Co.* (1982), 435 N.E.2d 22, 26. This distinction has been consistently articulated by the courts of this state for many years. *Rork v. Szabo Foods, Inc.* (1982), Ind. 439 N.E.2d 1338; *Jones & Laughlin Steel Corp. v. Kilburne* (1985), Ind.App., 477 N.E.2d 345; *White v. Woolery Stone Co., Inc.* (1979), 181 Ind.App. 532, 396 N.E.2d 137; *Kenwood Erection Co. v. Cowsert* (1953), 124 Ind.App. 165, 115 N.E.2d 507; *Rousch v. W.R. Duncan & Son* (1932), 96 Ind.App. 122, 183 N.E. 410. A particular loss of physical function may or may not affect an employee's ability to work. However, an employee is entitled to PPI Benefits resulting from an injury even if that employee suffers no inability to work whatsoever from the injury. IND. CODE 22-3-3-10. Moreover, an employee is entitled to PPI Benefits even if he is able to earn greater wages after his injury than before. *Miers v. Standard Forgings Corp.* (1946), 117 Ind.App. 89, 69 N.E.2d 180; *Inman v. Carl Furst Co.* (1930), 92 Ind.App. 17, 174 N.E. 96. In fact, it is erroneous to issue a PPI award on the basis of an injured employee's inability to work. *Northern Indiana Power Co. v. Hawkins* (1925), 82 Ind.App. 552, 146 N.E. 879.

On the basis of the foregoing authority, it is apparent that an impairment award has nothing to do with the inability to work. Rather, such an award is based solely upon the loss of physical or bodily function the employee suffers as a result of the injury. *Frazier v. Knox Consolidated Coal Corp.* (1943), 112 Ind.App. 649, 46 N.E.2d 275; *Smith v. Brown* (1924), 81 Ind.App. 667, 144 N.E. 849.

A solvent workmen's compensation carrier would be obligated to pay claims for both disability and impairment benefits. Under the guaranty law, however, IND. CODE 27-6-8-7(a)(i)(1) limits the Association's obligation to pay workmen's compen-

sation claims arising from bodily injury, sickness, or disease to medical expenses and amounts actually lost by reason of the claimant's inability to work. Because PPI Benefits under the Workmen's Compensation Act are not premised upon the employee's inability to work, the Association is precluded from paying such. Therefore, the trial court erred as a matter of law in determining that the Association was required to make payments for PPI Benefits awarded under the Workmen's Compensation Act.

The Employers cite *Hankins Construction v. Missouri Insurance Guaranty Association* (1986), Mo.App., 724 S.W.2d 583 as support for their proposition that the Association is required to make payments for PPI Benefits. In that case the Missouri Insurance Guaranty Association (MIGA) refused to pay a workmen's compensation claim for permanent partial disability (PPD) benefits. A permanent partial disability award under the Missouri Worker's Compensation Act is the equivalent of a PPI award under the Indiana act. MIGA based its refusal to pay those claims on a provision contained in the Missouri Guaranty Law limiting its obligation for bodily injury claims to medical expenses and "any amounts lost or to be lost by reason of claimant's inability to work...." Mo.Rev.Stat. § 375.785.4(1)(a)b. Specifically MIGA argued that because PPD Benefits were calculated with reference to a schedule of losses section of the Worker's Compensation Act, the award was not directly traceable to lost wages as required by the guaranty law. The Missouri Court of Appeals held, however, that MIGA was liable to Hankins for any PPD Benefits awarded under the Worker's Compensation Act.

This case is inapplicable to our situation, however. The Employers fail to note one critical difference between the Missouri Worker's Compensation Act and our act. As the Missouri Court of Appeals stated:

The reason for the award of permanent partial disability benefits is to compensate an injured party for lost earnings. The use of the schedule is only for administrative convenience. It simply removes the need to try the issue of what the effect on earning capacity is for each Worker's Compensation claimant....

724 S.W.2d at 587. In addition, Mo.Rev. Stat. § 287.190.3, which is similar to IND. CODE 22–3–3–10(b)(6), the section which sets forth the compensation to be paid for unscheduled permanent injuries states:

For permanent injuries other than those specified in the Schedule of Losses, the compensation shall be paid for such periods as are proportionate to the relation which the other injury bears to the injuries above specified, but no period shall exceed 400 weeks at the rates fixed in subsection 1. *The other injuries shall include permanent injuries causing a loss of earning power....* (Emphasis added)

Clearly, Missouri's concept of PPD Benefits and Indiana's concept of PPI Benefits are different. The above quoted material demonstrates that an award for PPD Benefits under Missouri's Worker's Compensation Act is based upon a loss of earning power rather than a loss of physical function as in Indiana. Because of this difference, *Hankins* is not authority for the proposition advanced by the employers. Of course *Hankins* is not binding upon us. IND. CODE 27–6–8–2 makes clear that the legislature intended to place a limitation upon the obligations assumed by the Association. The Association does not stand in the stead of the insurance carrier. Because of that fact, we disagree with *Hankins* to the extent that it tends to support the Employers.

Our decision does not mean that an injured employee will not receive payment of a PPI award to which he established he was entitled. The employee's right to such award remains in full force. However, instead of collecting payment from the Association, the Employers will be obligated to pay any PPI Benefits awarded by the Industrial Board.

Nor does our decision frustrate the policy underlying the guaranty law. The legislature created the Association and the fund it administers in order to protect the public

from losses arising from the insolvency of insurers doing business within the state. The Association is intended to provide a cushion for insureds and claimants when the insolvent insurer is unable to pay claims pursuant to the policies it has issued. The Association does not completely step into the shoes of the insolvent insurer, however. IND. CODE 27–6–8–2 expressly states the purpose of the Association as follows:

> The purpose of this chapter is to provide a mechanism for the payment of claims under certain insurance policies to avoid excessive delay in payment and to avoid excessive financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of this protection among insurers.

The dollar limitation set forth in IND. CODE 27–6–8–7(a)(i) limiting the Association's obligation to $50,000 per claim and $100,000 per occurrence and the clause limiting all other costs and expenses to $1000 make clear that the legislature did not intend to place all risk of loss upon the Association. The risk of loss for amounts exceeding these figures has been assigned to the insureds. Likewise, the legislature, by clear language, has dictated that the insureds must bear the loss of any PPI awards issued to a claimant under the Workmen's Compensation Act.

Accordingly, for the above reasons, the judgment is reversed and the trial court is ordered to enter judgment for the Association.

Judgment reversed.

RATLIFF, C.J. and CONOVER, J., concur.