James J. HILL, Appellant–Plaintiff,

v.

**WORLDMARK CORPORATION/MID AMERICA EXTRUSIONS CORPORATION, Appellee–Defendant.**

No. 93A02–9211–EX–571.

Court of Appeals of Indiana, Fifth District.

April 26, 1994.

the court; and the court shall remand such cause for execution."

Morris L. Klapper, Klapper Isaac & Parish, Indianapolis, for appellant.

Robert J. Wicker, Greenwood, for appellee.

RUCKER, Judge.

James J. Hill appeals the decision of the Worker's Compensation Board denying his claim for total permanent disability benefits.

We reverse.

This is the second time this case has come before us. On the first occasion Hill argued that the Board's conclusion he was not disabled was based on evidence devoid of probative value or so proportionately inadequate the conclusion could not be supported on any rational basis. Determining the Findings of Fact gave no indication of what evidence the Board relied upon in reaching its conclusion, we did not reach the merits of Hill's claim.[1] In an unpublished memorandum opinion we remanded the case with instructions to the Board to make specific findings of fact regarding Hill's ability to obtain reasonable types of employment in light of his back injury. *Hill v. Worldmark Corporation* (1993), Ind.App., 615 N.E.2d 917. On remand the Board issued Findings as ordered. However, they are insufficient to support the denial of Hill's claim for total permanent disability benefits and therefore the judgment of the Board must be reversed.

The record reveals that Hill worked for thirteen years as a packer for the Worldmark Corporation. His job involved lifting bundles of aluminum weighing approximately 100 to 140 pounds and lifting I-beams weighing between 30 and 100 pounds. The job also required him to stand eight to ten hours every work day. Hill is functionally illiterate, does not have a driver's license, and is totally dependant on others to help him with documentation. Prior to his job at Worldmark, Hill's other jobs also involved lifting and carrying.

On January 8, 1991, Hill severely injured his back during the course of his employment. After receiving medical attention, Hill attempted to return to work the following day and was given a light duty job of sweeping. Due to the pain in his back, Hill could not perform the work. He has not worked since January 9, 1991.

In proceedings not at issue in this appeal, Hill obtained reimbursement for medical expenses incurred as a result of his injury along with temporary total disability benefits as provided under Ind.Code § 22–3–3–7. On August 18, 1991, Dr. John L. Beghin rendered an opinion indicating that Hill had reached maximum recovery and had a permanent partial impairment of 3% as a result of his injury. Based on Dr. Beghin's opinion, Worldmark terminated all worker's compensation benefits to Hill as of August 18, 1991. Hill continued to seek medical treatment and did not return to work.

On December 23, 1991, Hill filed an Application for Adjustment of Claim with the Indiana Worker's Compensation Board claiming that he was permanently totally disabled, requesting Worldmark to reimburse him for medical expenses incurred after August 18, 1991, and requesting total disability compensation benefits under Ind.Code § 22–3–3–10(b)(3). Evidence was presented to a single member hearing officer who denied

---

1. The relevant Findings of Fact were as follows:

 That the parties stipulated and agreed and it is so found that [Hill] sustained injury to his person by reason of an accident in the course and scope of his employment with [Worldmark] on January 8, 1991; that [Worldmark] had notice and provided statutory medical attention and supplies and temporary total disability for the period through August 18, 1991 for a total of 31⅞ weeks at $294.00 per week. That [Worldmark] terminated temporary total disability upon an opinion rendered by Dr. Beghin on August 18, 1991; that [Hill] had reached maximum recovery and had a 3% permanent partial impairment due to the accident of January 8, 1991.

 That, subsequent to the rendering of the opinion by Dr. Beghin, [Hill] believed he was unable to work and has been examined and tested at several medical facilities; that none of those examinations or tests, with one exception, vary significantly with that of Dr. Beghin's opinion.

 That Dr. Williams['] opinion is the one exception. That opinion is based upon his understanding of Dr. Peters['] diagnostic findings. Because Dr. Williams relies on that misunderstanding his opinion is not given weight.

 That [Hill] reached maximum benefit from medical treatment on August 18, 1991; that [Hill's] injuries reached permanent and quiescent status on August 18, 1991; that [Hill] has failed to prove an entitlement to disability or statutory medical after August 18, 1991. That [Hill] has suffered a permanent partial impairment of 7% of the entire person as a result of the accidental injury of January 8, 1991. *Record* at 11–12.

Hill's claim. The hearing officer entered findings in support of its decision. Hill appealed to the Full Board which adopted the hearing officer's findings and conclusions. On appeal to this court we remanded the cause with instructions to the Board to make specific findings of fact regarding Hill's ability to obtain reasonable types of employment in light of his back injury. On remand the Board entered the following:

[1] Pursuant to the decision of the Court of Appeals of Indiana, it is found that Dr. Beghin examined Petitioner on August 15, 1991, and "allowed Mr. Hill to resume normal activities without restriction."

[2] It is further found that Mr. Hill testified that he has not been able to work after January 9, 1991, and at no time thereafter.

[3] It is further found that no vocational experts were called to testify by the parties in this case.

[4] It is further found that this matter has been reversed and remanded with instructions to make specific findings of fact regarding Mr. Hill's ability to obtain reasonable types of employment in light of his back injury.

[5] It is further found that Dr. Beghin was the treating physician when he examined [Hill] on August 15, 1991, and "allowed Mr. Hill to resume normal activities without restriction."

[6] It is further found that subsequent to the rendering of the opinion by Dr. Beghin, [Hill] disagreed with Dr. Beghin as to his ability to work and has been examined and tested at several medical facilities; that none of those tests or examinations, with one exception, vary greatly with the opinion of Dr. Beghin.

[7] It is further found that the one exception is the report of Dr. Hugh Williams, an orthopedic surgeon who found that [Hill] will never be able to work again; that determination is based upon a misunderstanding of the results of a diskogram performed by Dr. Peters.

[8] It is further found that the opinion of Dr. Williams is not considered for this reason.

[9] It is further found that no vocational expert testified in this matter for either party.

[10] It is further found that Dr. Driehorst testified at the hearing that [Hill's] range of motion tests were inconsistent such that he did not believe that [Hill] was exhibiting maximum effort; that in his deposition he testified that [Hill] was a symptom magnifier.

[11] It is further found that [Hill] was able to return to reasonable types of employment on August 18, 1991.

[12] It is further found that Dr. Hugh Williams, an orthopedic surgeon makes a finding that [Hill] will never be able to work again; that that determination is based on a misunderstanding of [Hill's] diskogram at the hands of Dr. Peters; due to that lack of understanding, Dr. William[s] opinion is not given weight.

[13] It is further found that no other medical doctor comes to a determination of ability to work that is substantially different than that.

Dated this 15th day of December, 1993.

*Supplemental Record* at 13–14.

 We first observe that several of the findings on remand are merely restatements of the original findings which this court has already determined to be inadequate. Also, a number of the findings are duplicative of each other and provide little insight into the Board's reasoning. Further, a "finding" that we remanded the cause with instructions provides no meaningful information for review. Indeed "Finding" No. 4 is nothing more than a comment on the procedural posture of this case. It is the duty of the Board, as trier of fact in disability cases, to make findings which reveal its analysis of the evidence and which are specific enough to permit intelligent review of the Board's decision. *K-mart Corp. v. Morrison* (1993), Ind.App., 609 N.E.2d 17, *trans. denied.* The need for specific findings of fact is not predicated on esoteric legal technicalities or the rote imposition of statutory provisions. Rather, as our supreme court observed in *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29:

The reasons [for requiring administrative findings] have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.

*Id.* at 31 quoting Davis, 2 *Administrative Law Treatise* § 16.05 p. 444 (1958). As we discuss below, only two of the thirteen findings on remand are specific enough to permit intelligent review of the Board's decision.

■ Because he is a claimant, Hill bears the burden of proving his entitlement to recovery for a permanent total disability. He therefore appeals from a negative judgment. In our review of that judgment we will neither reweigh evidence nor judge witnesses' credibility. Rather, we examine the record to determine whether there is any substantial evidence and reasonable inferences which can be drawn therefrom to support the Board's findings and conclusion. Only if the evidence is of a character that reasonable men would be compelled to reach a conclusion contrary to the decision of the Board will it be overturned. *Glenn v. Board of Comm'rs* (1990), Ind.App., 552 N.E.2d 485.

■ In the case before us the Findings clearly establish that Hill suffered an impairment. However, neither the Findings nor the evidence of record support the Board's conclusion that Hill did not suffer total permanent disability. "Impairment" refers to an injured employee's total or partial loss of physical function, while "disability" refers to an injured employee's inability to work. *Indiana Ins. Guar. Ass'n v. William Tell Woodcrafters, Inc.* (1988), Ind.App., 525 N.E.2d 1281, *trans. denied.* Although disability and impairment are not mutually exclusive there are substantive differences. Whether an employee is physically impaired rests upon medical evidence related to a loss of body function. On the other hand, whether an employee is disabled concerns vocational factors relating to the ability of the employee to engage in reasonable forms of work activity. *Rockwell Int'l v. Byrd* (1986), Ind. App., 498 N.E.2d 1033. In making the determination as to whether a worker is able to engage in reasonable types of employment the Board must evaluate and make findings of fact of all evidence presented on the claimant's physical and mental fitness as well as the availability of reasonable employment opportunities. Although the claimant's physical impairment may be inextricably involved in evaluating a total permanent disability claim, it is not the sole factor to be considered. *Id.* Other nonmedical factors, such as the claimant's age, education, training, skills, and job opportunities, must be weighed by the Board when the claimant presents evidence of such factors.

■ In this case only Finding Nos. 5 and 6 actually relate to the question of Hill's ability to engage in reasonable forms of work activity.[2] Finding No. 5 is misleading and Finding No. 6 is unsupported by the evidence. In No. 5, the Board found that Dr. Beghin allowed Hill to resume normal activities without restriction. By inference it would appear that resuming normal activities include normal work activities at Worldmark lifting 100 to 140–pound aluminum bundles. However, Dr. Beghin specifically testified "I didn't tell him to go back to work. I said that I would place no restriction upon his activity and would release him to work. His choice of return to work would be his own."

---

2. We observe that "Finding" Nos. 2 and 10 recount the testimony of Hill and Dr. Driehorst respectively. It would appear that the Board may have discounted the testimony of Hill and credited the testimony of Dr. Driehorst. Weighing evidence and judging witness credibility is certainly within the province of the Board. However, statements which merely relate the testimony of witnesses appearing before the Board are not findings of fact. While such statements lend perspective to our task, they in no way indicate what the Board found after examining the evidence. *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29. Stating that the Board found a witness testified to thus and so does not specifically reveal the weight, if any, given such testimony. "The inclusion of statements of that nature is not harmful error, but rather mere surplusage." *Id.* at 33. Further, Finding No. 11 is a finding of *ultimate* fact. That is, the ultimate factual conclusion regarding Hill's disability claim. However, before the ultimate finding of fact can be reached, the findings of *basic facts* must be specific and reveal the Board's analysis of the evidence.

Record at 200–01. Dr. Beghin also noted that Hill's ability to lift heavy objects is limited by the pain in his back. He acknowledged that Hill's pain is real and noted that if the pain was too great then Hill had a reason to stop his activity. Dr. Beghin suggested that it is reasonable to allow Hill to perform as much activity as pain allows and observed if "he can't do the job, I would recommend he find another job." *Record* at 201.

██ In sum, although Finding No. 5 is supported by the evidence, it does not support a conclusion that Hill was able to engage in reasonable forms of work activity. Indeed, other than concluding that Hill was "able to return to reasonable types of employment" the Board does not indicate what types of employment Hill is capable of performing given his injury, functional illiteracy, and lack of vocational skills. The reasonableness of a worker's opportunities are to be assessed by his or her physical and mental fitness for the opportunities and by the availability of those opportunities. *Perez*, 426 N.E.2d at 31.

In Finding No. 6 the Board found that Hill had seen other medical care providers, and that no other test or examination performed on him varied greatly from Dr. Beghin's opinion that Hill be allowed to resume normal activities. However, this finding is contrary to the evidence. The record reveals that Hill received treatment at a clinic where a Dr. Driehorst practiced medicine. Dr. Driehorst testified that Hill underwent a "functional capacity assessment" which involved a four-hour test where Hill was asked to perform certain tasks including lifting, carrying, pushing and pulling. The test results revealed that Hill "should be prohibited from crawling, crouching, balancing, climbing stairs.... The highest amount that he was allowed to lift was 12.6 pounds and that would be from a chair height to desk height." *Record* at 31, 32. Dr. Driehorst attested to the validity of the functional capacity assessment and stated that Hill's return to labor activities would raise the danger of increasing his injury. He further testified that Hill could not return to the type of work he was doing prior to his injury.

██ Clearly Dr. Driehorst's testimony is in direct conflict with the testimony of Dr. Beghin. There is no question that the Board, as fact finder, has the authority to give such weight to witnesses' testimony as it deems appropriate. *Dane Trucking Co. v. Elkins* (1988), Ind.App., 529 N.E.2d 117, *trans. denied.* The Board, for example, could have completely discounted Dr. Driehorst's testimony. However, the Findings do not indicate the Board took that approach. Rather, the Board found that other than the testimony of Dr. Williams, which the Board did discount, none of the tests or examinations varied greatly with the opinion of Dr. Beghin. The record reveals otherwise.

The evidence of record in this case does not support a finding that Hill is capable of engaging in reasonable forms of work activity, a necessary predicate in determining whether or not Hill is disabled. Because the conclusion that Hill is not permanently totally disabled is unsupported by the Findings, the Board's decision must be reversed.

Judgment reversed.

BARTEAU and HOFFMAN, JJ., concur.