James J. HILL, Appellant–Plaintiff,

v.

WORLDMARK CORPORATION/MID AMERICA EXTRUSIONS CORP. Appellee–Defendant.

No. 93S02–9505–EX–617.

Supreme Court of Indiana.

May 31, 1995.

Morris L. Klapper, Klapper Isaac & Parish, Indianapolis, for appellant.

Robert J. Wicker, Greenwood, for appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

This worker's compensation appeal centers on the standard of review to be applied to a negative judgment entered by the Worker's Compensation Board.

Plaintiff-appellant James J. Hill was employed by the defendant-appellee, Worldmark Corporation/Mid America Extrusions Corporation ("Worldmark"), when he suffered an accidental injury on January 8, 1991, while lifting an object in the course of his employment. Following an initial diagnosis of lumbosacral strain, the plaintiff received physical therapy, work conditioning, work hardening, and further back rehabilitation. The treating orthopedic surgeon, John J. Beghin, M.D., rendered an opinion on August 15, 1991, that Hill had reached maximum recovery, assigned him a three percent whole body permanent partial impairment rating, and authorized him to resume normal activities without restriction. On the basis of this opinion, Worldmark terminated Hill's worker's compensation benefits as of August 18. Plaintiff continued to seek medical treatment and did not return to work. Unable to reach agreement regarding further worker's compensation benefits, Hill filed an Application for Adjustment of Claim with the Indiana Worker's Compensation Board, alleging that he was entitled to further medical expenses and seeking an award of benefits for permanent total disability. At the ensuing hearing, Worldmark and Hill stipulated that Hill had sustained injury to his person by reason of an accident in the course and scope of his employment with Worldmark on January 8, 1991, and that Worldmark had provided statutory medical attention, supplies, and benefits for temporary total disability for the period through August 18, 1991. The hearing officer thereafter found Hill's permanent partial impairment rating to be seven percent of the entire person but otherwise de-

nied his claim, finding in part "that Petitioner has failed to prove an entitlement to disability or statutory medical after August 18, 1991." Record at 11. The plaintiff sought review by the full Worker's Compensation Board. Following a further hearing, the full Board sustained and adopted the hearing officer's findings and conclusions.

The plaintiff thereafter appealed, alleging that the decision of the Worker's Compensation Board was based on evidence devoid of probative value or so proportionately inadequate that the conclusion could not be supported on any rational basis. In an unpublished memorandum decision, the Court of Appeals did not reach the merits of the plaintiff's claim but remanded to the Board with instructions to make specific findings of fact regarding Hill's ability to obtain reasonable types of employment in light of his back injury. The Board then entered further findings. After additional briefing by the parties, the Court of Appeals then issued its opinion reversing the decision of the Board. *Hill v. Worldmark Corp./Mid America Extrusions Corp.* (1994), Ind.App., 632 N.E.2d 1173. Perceiving that the essential question before the Board was whether Hill was disabled, the Court of Appeals reversed on grounds of insufficient supporting findings:

> The evidence of record in this case does not support a finding that Hill is capable of engaging in reasonable forms of work activity, a necessary predicate in determining whether or not Hill is disabled. Because the conclusion that Hill is not permanently totally disabled is unsupported by the Findings, the Board's decision must be reversed.

*Hill*, 632 N.E.2d at 1178. This misperceives the nature and character of the Board's role in deciding this case. Had the Board made an affirmative finding of permanent total disability, such a conclusion would have needed to be properly supported by findings. Here, on the other hand, the Board's conclusion was a negative one—that Hill had failed to prove his claim of permanent total disability.

The Board's decision need only be supported by findings related to the issue of proof, not to the factual question of Hill's disability. That is, for the Board to find against Hill, it need only determine that Hill had failed to prove that he was disabled; the Board need not determine that Hill was in fact not disabled.

Both parties agree that the applicable standard of review is found in *Perez v. U.S. Steel Corp.* (1981), Ind., 428 N.E.2d 212. Like Hill, Perez had appealed a decision of the Board awarding him benefits for permanent partial impairment but denying his claim for permanent total disability.[1] In *Perez*, this Court addressed whether the evidence supported the Board's findings and conclusions denying the claim of permanent total disability. The opinion began by noting that a worker seeking to establish permanent total disability is required to prove that he or she "cannot carry on reasonable types of employment." *Perez*, 428 N.E.2d at 215–16. We noted that the claimant bears the burden of proving the existence of this condition in order to justify recovery for "permanent total disability," and that, in an appeal from a negative judgment, the following standard applies:

> [W]e will not weigh the evidence nor judge the credibility of witnesses. Rather, we examine the record only to determine whether there [are] any substantial evidence and reasonable inferences which can be drawn therefrom to support the Board's findings and conclusion. Only if the evidence is of a character that reasonable [persons] would be compelled to reach a conclusion contrary to the decision of the Board will it be overturned.

*Perez*, 428 N.E.2d at 216. Noting that there were conflicts in the expert testimony presented to the Board, we applied the standard of review and upheld the Board's findings and conclusions. We concluded that "Perez's contention that the evidence warrants a result contrary to that reached by the Board

---

1. Indiana's worker's compensation scheme provides a variety of differing benefits. Those applicable for "impairment" are distinct from those for "disability." The term "impairment" denotes a loss of physical function, while "disability" refers to an inability to work, measured by mental and physical fitness for various employment opportunities. *Perry v. Stitzer Buick GMC, Inc.* (1994), Ind., 637 N.E.2d 1282, 1288.

and that, as a matter of law, he suffered total permanent disability, must fail." *Perez,* 428 N.E.2d at 216. We affirmed the Board's denial of additional benefits.

Subsequent decisions have repeatedly recognized and applied this standard for the appellate review of negative judgments in worker's compensation cases. *See, e.g., Donahue v. Youngstown Sheet and Tube Co.* (1985), Ind., 474 N.E.2d 1013, 1014; *Rensing v. Indiana State Univ. Bd. of Trustees* (1983), Ind., 444 N.E.2d 1170, 1172; *Rork v. Szabo Foods* (1982), Ind., 439 N.E.2d 1338, 1341. In *Rork* we emphasized that "the factfinder is free to accept or reject expert opinion testimony." *Rork,* 439 N.E.2d at 1343. We there concluded that the evidence, "together with a lack of any evidence to establish the general unavailability of employment opportunities suited to Rork's condition," required us to affirm the Board's conclusion that Rork was not permanently totally disabled. *Id.*

■ Hill contends that evidence of his inability to walk extensively, stand or sit for long periods of time, or lift heavy objects; his illiteracy; and his lack of arithmetic ability has "extinguished any vocational possibilities" he might have and "meets the test for permanent total disability." Appellant's Brief in Opposition to Transfer at 10.

The evidence supporting the Board's decision includes testimony from William L. Driehorst, M.D., Hill's treating physician after Dr. Beghin, who testified that Hill is able to work a four-hour day. Record at 144, 228. During that day, Dr. Driehorst found, Hill can spend between one and two hours standing, between one and two hours sitting, and between one and four hours walking short distances. *Id.* Dr. Driehorst's testimony also established that Hill could spend up to one-third of his day engaged in various activities including squatting, bending or stooping, lifting 8.2 pounds above his shoulders, lifting 12.6 pounds from chair height to desk height, carrying 9.3 pounds in either arm, pushing 10.4 pounds with both arms, pulling 10.4 pounds with both arms, using his left foot, and grasping firmly with both hands; that he could spend up to two-thirds of a workday lifting six pounds from chair height to desk

height and/or using his right foot; and that he could spend up to one hundred percent of his time with his head and neck either flexing, rotating, or remaining in a static position and up to one hundred percent of his time engaged in either "simple" or "fine" grasping. Record at 31–32, 228–29. Such testimony discredits Hill's claim that he is permanently unable to "carry on reasonable types of employment." *See Perez,* 428 N.E.2d at 215–16.

When the case was remanded to the Board to make specific findings regarding Hill's ability to obtain reasonable types of employment in light of his injury, the Board responded with findings consistent with its proper role. It noted that Hill's treating physician had authorized him to resume normal activities without restriction, that no expert vocational evidence had been presented in support of Hill's claim of total disability, that Hill's medical evidence of permanent disability ought not be given weight, that there was no other medical evidence of Hill's ability or inability to work, and that Hill "was able to return to reasonable types of employment on August 18, 1991." Supplemental Record at 14. In addition, the Board's initial acceptance and adoption of the hearing officer's finding thereby incorporated the finding "that [Hill] has failed to prove an entitlement to disability or statutory medical after August 18, 1991." Record at 11.

■ As claimant, Hill bore the burden of proving that he is eligible for worker's compensation benefits for permanent total disability. *Perez,* 428 N.E.2d at 216. Our review of the Board's findings and the relevant evidence in the record fails to convince us that the evidence is such that reasonable persons "would be compelled to reach a conclusion contrary to the decision of the Board," and it must therefore be affirmed. *Rork,* 439 N.E.2d at 1341; *Perez,* 428 N.E.2d at 216. Unless the evidence is "undisputed and leads inescapably" to a result contrary to the Board's finding, it will be affirmed. *Rensing,* 444 N.E.2d at 1172.

Transfer is granted. We affirm the decision of the Worker's Compensation Board

denying the plaintiff-appellant's claim for total permanent disability benefits.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

In this case, the Worker's Compensation Board denied appellant James J. Hill disability benefits. The Board based its denial on the fact that appellant Hill bore the burden of proof on the issue of his entitlement to benefits and failed to meet it. The claim of appellant is that this conclusion is error. I would not reach the merits of the claim, but would remand to the Board, because its findings of fact fail the test of legal sufficiency.

It is basic, as the majority opinion recognizes, that the role of the judiciary is restricted in the area of workmen's compensation to the review of awards and decisions of the Worker's Compensation Board for errors of law. Ind.Code Ann. 22–3–4–8 (West 1986); Ind.Appellate Rule 4(C). This Court has carefully considered its role:

> Orders of an administrative body are subject to judicial review and ... they must be so to meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found.

*Warren v. Indiana Telephone Co.* (1940), 217 Ind. 93, 105, 26 N.E.2d 399, 404. This passage identifies two questions of law which may be considered by the reviewing court: (1) Are the agency's findings supported by the evidence in the record as a whole? (2) Do the agency's findings support its decision? Another question of law which may be considered by the reviewing court is: Are the findings sufficiently complete to permit the court to intelligently review the agency's decision. *Carlton v. Board of Zoning Appeals of Indianapolis* (1968), 252 Ind. 56, 65, 245 N.E.2d 337, 343.

In this case, the Worker's Compensation Board of Indiana made the following relevant findings:

[1] Pursuant to the decision of the Court of Appeals of Indiana, it is found that Dr. Beghin examined Petitioner on August 15, 1991, and "allowed Mr. Hill to resume normal activities without restriction."

[2] It is further found that Mr. Hill testified that he has not been able to work after January 9, 1991, and at no time thereafter.

[3] It is further found that no vocational experts were called to testify by the parties in this case.

[4] It is further found that this matter has been reversed and remanded with instructions to make specific findings of fact regarding Mr. Hill's ability to obtain reasonable types of employment in light of his back injury.

[5] It is further found that Dr. Beghin was the treating physician when he examined Petitioner on August 15, 1991, and "allowed Mr. Hill to resume normal activities without restriction."

[6] It is further found that subsequent to the rendering of the opinion by Dr. Beghin, Petitioner disagreed with Dr. Beghin as to his ability to work and has been examined and tested at several medical facilities; that none of those tests or examinations, with one exception, vary greatly with the opinion of Dr. Beghin.

[7] It is further found that the one exception is the report of Dr. Hugh Williams, an orthopaedic surgeon who found that Petitioner will never be able to work again; that determination is based upon a misunderstanding of the results of a diskogram performed by Dr. Peters.

[8] It is further found that the opinion of Dr. Williams is not considered for this reason.

[9] It is further found that no vocational expert testified in this matter for either party.

[10] It is further found that Dr. Driehorst testified at the hearing that Petitioner's range of motion tests were inconsistent such that he did not believe that the Peti-

tioner was exhibiting maximum effort; that in his deposition he testified that Petitioner was a symptom magnifier.

[11] It is further found that Petitioner was able to return to reasonable types of employment on August 18, 1991.

[12] It is further found that Dr. Hugh Williams, an orthopedic surgeon makes a finding that Petitioner will never be able to work again; that that determination is based on a misunderstanding of Petitioner's diskogram at the hands of Dr. Peters; due to that lack of understanding, Dr. Williams['s] opinion is not given weight.

[13] It is further found that no other medical doctor comes to a determination of ability to work that is substantially different than that.

Findings of fact must be supported by substantial evidence on the record as a whole, and those findings which satisfy this requirement must support the agency's conclusion of law.

Initially, it is worth pointing out that Findings 2, 3, 4, 9, and 10 are not proper findings at all. In addition, Finding 13 is not supported by the record. No administrative agency can conclude from the testimony of four physicians that no other doctor reaches some conclusion. There are many doctors and the Board cannot say with any certainty to what conclusions they have come. The Court of Appeals rightly determined that only two of the Board's findings, 5 and 6, were supported by substantial evidence on the record. The Court of Appeals, in spite of their unfortunate concluding statement, *Hill v. Worldmark Corp./Mid America Extrusions Corp.* (1994), Ind.App., 632 N.E.2d 1173, 1178, in my opinion, correctly reversed the Board's action.

The majority correctly relies on *Perez v. U.S. Steel Corp.* (1981), Ind., 428 N.E.2d 212. Op. at 786. However, it is important that we be clear on the actual status of the case in *Perez*. The Court of Appeals had already decided that case and its subsequent procedural history is revealing. *See Perez v. United States Steel Corp.* (1977), 172 Ind.App. 242, 359 N.E.2d 925, *after remand* (1981), Ind.App., 416 N.E.2d 864, *transfer granted* (1981), Ind., 426 N.E.2d 29, *after remand*

(1981), Ind., 428 N.E.2d 212 (affirming award).

The first time that the Court of Appeals heard *Perez*, it concluded that the Industrial Board's findings were inadequate for review on the issue of whether the claimant was permanently totally disabled and remanded the case for the Board to render adequate findings. *Id.* at 249, 359 N.E.2d at 929. After remand, the Court of Appeals affirmed the Board's decision because the court had concluded that findings of fact are adequate where they are sufficient to disclose a valid factual basis under the issues for the legal result(s) reached. *Perez v. U.S. Steel Corp.* (1981), Ind.App., 416 N.E.2d 864, 865.

When presented with this case on petition to transfer, we granted transfer, reversed, and remanded to the Board. *Perez v. U.S. Steel Corp.* (1981), Ind., 426 N.E.2d 29. In that opinion, we made the requirements clear:

[F]indings of basic fact must reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim. The 'finding of ultimate fact' is the ultimate factual conclusion regarding the particular claim before the Board; here, for example, that ultimate question is whether Perez is permanently totally disabled. The finding of *ultimate* fact may be couched in the legal terms and definitions which govern the particular case. In contrast, the specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board. The findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its finding of ultimate fact.

*Id.* at 33. The rendering of such findings enables both the reviewing court and the parties to understand how the administrative agency analyzed the evidence and reached its final conclusion. *Id.* at 32. The court also emphasized that statements like "A witness

testified that ...." are not findings at all. *Id.* at 33.

This all-too-brief review of the relevant case history brings us back to the majority's reliance on the final *Perez* decision. The majority is correct when it says that we will not disturb the Board's result unless the evidence is such that reasonable men would be compelled to reach a conclusion contrary to that of the Board. Op. at 787 (quoting *Perez,* 428 N.E.2d at 216). However, that degree of deference applies only where the Board has produced adequate findings in support of its decision. I would never attempt to limit *Perez* to its particular facts and unique procedural history, but even a cursory comparison of the findings in *Perez* and those in this case makes it clear that the indulgent deference of the majority opinion is unwarranted. *See Perez,* 428 N.E.2d at 213–15. Administrative agencies are given broad powers, and it is not too much to ask that they support their actions by developing results that are at least minimally amenable to appellate review. Unfortunately, the Worker's Compensation Board did not meet this standard on remand from the Court of Appeals. Since the majority of the Board's findings are unsupported by the record and the remaining findings do not adequately show the basis of the decision against appellant, intelligent review of that decision on its merits is impossible. I am forced to dissent.