**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 04 2013, 8:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EDWARD C. LAWHEAD**
Schreiner, Malloy & Etzler, P.C.
Highland, Indiana

ATTORNEY FOR APPELLEE:

**ELIZABETH M. BEZAK**
Burke Costanza & Carberry LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON ULYSSES HARMON, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1212-EX-1030 |
| | ) | |
| UNITED STATES STEEL CORPORATION | ) | |
| f/k/a USX CORPORATION, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSTION BOARD
Application No. C-206972
The Honorable Linda Hamilton, Chairperson

**June 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Jason Ulysses Harmon appeals the Worker's Compensation Board's ("the Board") decision that he was not entitled to any benefits under the Indiana Worker's Compensation Act. Harmon contends that the Board erred in finding he did not give his employer, United States Steel ("USX"), proper statutory notice of his injury and his carpal tunnel syndrome was not caused by his job at USX. Finding that the Board did not err and that Harmon is not entitled to any benefits, we affirm.

**Facts and Procedural History**

On or around February 6, 1995, Harmon began working for National Steel, which was bought by USX in May 2003. In August 2002, Harmon sought treatment for tingling and numbness in his hands that began after a three-hour motorcycle trip a year and a half before. Appellee's App. p. 20. The next month, Harmon reported having throbbing in his wrist after doing yard work. *Id.* at 19. In March 2004 and February 2005, Harmon again complained of having pain in both wrists and was diagnosed by a doctor at Integrated Pain Management as having carpal tunnel syndrome. *Id.* at 21. Harmon was prescribed splints to wear on his wrists at night, stretches, and physical therapy.

In January 2005, Harmon was also diagnosed with carpal tunnel syndrome by Dr. Andrew Szefler, M.D., at the United States Steel Family Medical Clinic. *Id.* at 31. Dr. Szefler scheduled a diagnostic test, an EMG, to confirm the diagnosis and referred Harmon to a hand surgeon. Harmon never had the EMG and never went to the hand surgeon. Harmon sought treatment with Dr. Szefler again in July 2005, April 2008, and May 2009 for numbness and tingling in his hands and fingers. *Id.* at 27-29.

2

Harmon began working as a feeder at USX in June 2010, which required him to swing a sledgehammer of varying weights five to eight times every ten to fifteen minutes to check the dexterity of the welds of the steel coils. Harmon would work eight-hour shifts, during which time he would strike between twenty and twenty-eight coils.

On August 15, 2010, Harmon failed to come to work as scheduled and failed to follow protocol for calling off of work. Harmon presented to the emergency room at Methodist Hospital in Merrillville that morning, complaining again about symptoms in his left hand. Harmon informed the doctor about his use of a sledgehammer at work, and he was diagnosed with traumatic peripheral neuropathy and referred to Dr. Richard Oni, M.D.

The next day, USX issued three discipline citations to Harmon for: (1) failure to report to work; (2) failure to work as scheduled; and (3) violation of a Last Chance Agreement.[1] On August 20, 2010, Harmon was discharged from USX. Harmon filed a grievance relating to his discharge, reporting for the first time his claim of work-related bilateral carpal tunnel syndrome. Harmon's employment would be reinstated a year later as a result of an arbitration award.

Three days after his discharge, Harmon began treatment with Dr. Oni. Harmon again was diagnosed with carpal tunnel syndrome, along with cervical radiculopathy, and was sent for an EMG of both arms. The EMG showed carpal tunnel syndrome but no cervical radiculopathy. Dr. Oni opined that Harmon's job "swinging a sledgehammer at

---

[1] The Last Chance Agreement was entered into on February 16, 2010, as a settlement of two other discharges that resulted from workmanship issues. Although Harmon had never before been disciplined for attendance issues, the Last Chance Agreement required that Harmon must call in at least two hours before his scheduled shift if he was going to be absent or late. Any material violation of the Last Chance Agreement would result in a suspension subject to discharge. Ex. 6.

work constantly and the repetitive trauma to the median nerve in a confined space to both wrists caused the condition," *id.* at 25, and suggested that Harmon undergo surgery to treat his condition. Harmon attempted to have surgery, but Dr. Oni could not proceed until the surgery was cleared by worker's compensation. USX's Medical Director, Dr. Tokowitz, and a safety engineer performed an evaluation of the feeder job and talked to Harmon about his job. They found that the feeder job did not pose any increased risk for upper extremity disorders. *Id.* at 40. The job was not considered repetitive and was determined not to be the cause of Harmon's carpal tunnel, so worker's compensation did not cover Harmon's surgery. USX also found that Harmon failed to report his injury to his supervisors when it occurred, as required under Indiana Code sections 22-3-3-1 and 22-3-3-2 and USX policy.

After USX denied Harmon's work-related injury claim, Harmon sought treatment with Dr. Gregory McComis, M.D., who also diagnosed him with carpal tunnel syndrome. After Harmon discussed the surgery with his personal insurance company, Dr. McComis performed a left carpal tunnel release on December 7, 2011, and a right carpal tunnel release on January 3, 2012. On February 14, 2012, Harmon was released back to work with no restrictions.

Harmon filed an application for worker's compensation benefits against USX on October 14, 2010, and an amended application on January 17, 2011. A single-member hearing was held, and an order was issued that Harmon was not entitled to any benefits under the Indiana Worker's Compensation Act. Appellant's App. p. 3-9. Harmon filed

an appeal before the full Board. A hearing was held, and the order from the single-member hearing was adopted and affirmed. *Id.* at 11-12.

Harmon now appeals.

**Discussion and Decision**

In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Christopher R. Brown, D.D.S., Inc. v. Decatur Cnty. Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). As to the Board's interpretation of the law, an appellate court employs a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. *Id.*

In this case, Harmon is appealing from a negative judgment. In an appeal from a negative judgment by the Board, we will neither reweigh the evidence nor judge the credibility of witnesses. *Hill v. Worldmark Corp./Mid Am. Extrusions Corp.*, 651 N.E.2d 785, 786 (Ind. 1995). Rather, we examine the record only to determine whether there are any substantial evidence and reasonable inferences that can be drawn therefrom to support the Board's findings and conclusion. *Id.* Only if the evidence is of a character that reasonable persons would be compelled to reach a conclusion contrary to the decision of the Board will it be overturned. *Id.* In other words, unless the evidence is undisputed and leads inescapably to a result contrary to the Board's finding, it will be affirmed. *Id.* at 787.

Harmon first contends that the Board erred in finding that he failed to provide proper notice of his injury under both company protocol and Indiana Code sections 22-3-3-1 and -2. Indiana Code section 22-3-3-1 requires that unless the employer has actual knowledge of the injury, the injured employee must give written notice to the employer within thirty days from the date of injury; otherwise, no compensation is paid until the employer receives notice. However, that section goes on to state that "[n]o lack of knowledge by the employer or the representative . . . shall bar compensation, unless the employer shall show that he is prejudiced by such lack of knowledge . . . and then only to the extent of such prejudices." Ind. Code § 22-3-3-1. Indiana Code section 22-3-3-2 sets forth the specific form and contents of the written notice. In his deposition, Harmon admitted that he did not notify anyone at USX of his injury before his grievance procedure. Appellee's App. p. 33. So, while we do find that the Board did not err in finding that Harmon failed to give the statutorily required notice in the proper form within the proper time frame, USX was not prejudiced by this failure because Harmon was denied compensation.

Harmon also contends that the Board erred in rejecting the medical opinion that his carpal tunnel syndrome was caused by his feeder job at USX. Whether an employee's injury was caused by his employment is a question of fact to be determined by the Board. *Conway ex rel. Conway v. Sch. City of E. Chi.*, 734 N.E.2d 594, 597 (Ind. Ct. App. 2000), *trans. denied.* In this case, the Board found that Harmon's claim of being diagnosed with carpal tunnel syndrome in August 2010 was "not credible in light of the numerous, objective documentation[s] which unequivocally indicate that not only had the Plaintiff

6

been diagnosed with carpal tunnel many years prior to 2010, but that he had this diagnosis many years before becoming employed with U.S. Steel . . . ." Appellant's App. p. 7. The Board also found that Harmon failed to show that his carpal tunnel syndrome was caused by his employment as a feeder at USX. *Id.* at 9. We agree.

Medical records show that Harmon began treatment for his symptoms in August 2002, and he was diagnosed with carpal tunnel syndrome for the first time in March 2004, over six years before he contends he received the diagnosis. Appellee's App. p. 20-21. He was again diagnosed with carpal tunnel syndrome in January and February 2005, *id.* at 21, 31, and saw Dr. Szefler for treatment of his symptoms in July 2005, April 2008, and May 2009 for numbness and tingling in his hands and fingers. *Id.* at 27-29.

In January 2005, an EMG was scheduled for Harmon, and he was referred to a hand surgeon, but Harmon did not follow-through on either of those recommended treatment plans. *Id.* at 30-31. However, the fact that he was referred to a surgeon almost seven years before he actually had the surgery on his wrists indicates that the carpal tunnel syndrome was likely advanced to the point of needing surgery before he began working as a feeder for USX.

Based on these facts, we find that the evidence and the reasonable inferences drawn therefrom support the Board's findings rejecting Harmon's claim that he was diagnosed with carpal tunnel syndrome in August 2010 and that his feeder job at USX was the cause of this diagnosis. We therefore uphold the Board's decision that Harmon is not entitled to any benefits under the Indiana Worker's Compensation Act.

Affirmed.

KIRSCH, J., and PYLE, J., concur.