


FILED

Aug 06 2025, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Bobby Arnold,

*Appellant-Plaintiff*

v.

County Line Landfill Partnership,

*Appellee-Defendant*

August 6, 2025

Court of Appeals Case No.
24A-EX-3124

Appeal from the Full Worker's Compensation Board of Indiana

The Honorable Linda Peterson Hamilton, Chairman

Application No.
C-236488

**Opinion by Judge Mathias**
Judges Foley and Felix concur.

**Mathias, Judge.**

[1] Bobby Arnold filed an Application for Adjustment of Claim with the Worker's Compensation Board of Indiana (the "Board") against his employer, County Line Landfill Partnership ("County Line"). A Single Hearing Member awarded Arnold compensation for permanent partial impairment of 31% of the whole person as well as medical expenses. The Single Hearing Member denied Arnold's claims that he is permanently and totally disabled and that County Line acted with bad faith and without due diligence. Thereafter, Arnold petitioned the full Board, which affirmed the Single Hearing Member's decision by a vote of four to three. Arnold now appeals and presents the following restated issues for our review:

> 1. Whether the Board erred when it denied his claims alleging County Line's bad faith and lack of diligence.
>
> 2. Whether the Board abused its discretion when it denied his claim that he is permanently and totally disabled.

[2] We affirm.

## Facts and Procedural History

[3] On November 7, 2016, Arnold was employed by County Line as a heavy equipment operator when he fell from a bulldozer and suffered a concussion. While County Line investigated the compensability of Arnold's injuries, it withheld temporary total disability benefits. Arnold sought medical treatment from his primary care physician. In the weeks and months after the fall, Arnold

experienced headaches, dizziness, and occasional vomiting. He also began having neck and arm pain.

[4] In July 2017, counsel for County Line wrote a letter to Arnold's counsel explaining that its investigation into the cause of the accident was ongoing. Arnold's medical records revealed that Arnold had "certain [underlying] medical conditions" that could have caused him to faint prior to his fall. Appellee's App. Vol. 2, p. 66. In September, Dr. Frederick Unverzagt, Ph.D., submitted a report following his review of Arnold's medical history. Dr. Unverzagt concluded that Arnold had sustained a concussion as a result of the November 2016 fall and that his symptoms should have resolved but were persisting due to his pre-existing depression and anxiety. Dr. Unverzagt recommended a neuropsychological evaluation "to rule out malingering." *Id.* at 109. And in October, County Line asked an orthopedic physician, Dr. J. Michael Kelbel, M.D., to examine Arnold. Dr. Kelbel concluded that Arnold's neck pain was not related to his work injury.

[5] In November, Arnold and County Line submitted an interim agreement whereby County Line acknowledged that Arnold had sustained a concussion in November 2016 in the course of his employment. And County Line agreed to pay Arnold temporary total disability ("TTD") benefits at the rate of $780 per week, plus a lump sum of $38,664.60 for benefits accrued to date. County Line also agreed to provide Arnold with "reasonable and necessary medical care," with County Line retaining its right to direct his medical care. Appellee's App. Vol. 2, p. 3.

[6] Arnold's medical history includes treatment for anxiety and depression, as well as neck and low back injuries. Accordingly, County Line directed Dr. Christina Stemmler, a neuropsychologist, to perform a neuropsychological/psychological examination of Arnold. After testing in December, Dr. Stemmler noted that "it is reasonable to conclude" that Arnold's pre-existing anxiety and depression "were aggravated by the effects of [his] November 2016 concussion." Appellant's Amended App. Vol. 2, p. 5 (italics omitted). And she recommended "aggressive treatment of Mr. Arnold's anxiety and depression." *Id.* Dr. Stemmler concluded that Arnold should engage in counseling "to work to develop more adaptive coping skills in general, as well as skills to help him manage his emotions and stress." *Id.* at 5-6. And she recommended "inclusion of a pain management component to teach him practical skills for managing any pain problems he has." *Id.* at 6 (italics omitted).

[7] Despite Dr. Stemmler's recommendations, County Line did not provide psychological treatment or counseling for Arnold. And in February 2018, County Line concluded that Arnold "was unavailable to work for reasons unrelated to the compensable injury" and terminated Arnold's TTD benefits. *Id.*

[8] Still, Dr. Henry DeLeeuw, a spine surgeon, conducted an independent medical examination of Arnold at the Board's behest and concluded that, while Arnold had "a pre-existing cervical spine condition," it was aggravated due to the work injury. Appellee's App. Vol. 2, p. 75. Dr. DeLeeuw recommended a spinal fusion surgery. But Arnold did not want to have the recommended surgery.

Instead, he opted for an epidural steroid injection, which provided almost no relief. In a December 2019 report, Dr. Robert Shugart concluded that Arnold's neck pain and related symptoms were due to the work injury, and he recommended surgery. Accordingly, Arnold underwent surgery on his neck in June 2020.

[9] In November 2021, Dr. Joseph Caldwell, II examined Arnold and concluded that he had an 11% whole-person permanent partial impairment rating due to his cervical spine injuries. Accordingly, County Line terminated Arnold's temporary total disability benefits and denied the compensability of any treatment or additional disability benefits after that date. In June 2022, Arnold consulted with Dr. Mark Barrett, who concluded that Arnold had reached maximum medical improvement in December 2020, and that he had a 31% whole-person permanent partial impairment rating. Dr. Barrett also concluded that Arnold could no longer work as a heavy equipment operator and had a permanent restriction on lifting anything more than ten pounds.

[10] In December 2022, Arnold sought the opinion of a vocational expert, Thomas Roundtree, who found that Arnold is unable to perform even sedentary work due to his ongoing symptoms. Accordingly, Roundtree concluded that Arnold is permanently and totally disabled.

[11] Following a hearing in September 2023, the Single Member of the Board found that Arnold had sustained a 31% permanent partial impairment of the whole person. The Single Member ordered County Line to pay for all of Arnold's

medical expenses related to his neck condition and lumbar spine condition from the date of the work accident to the date of the order. And the Single Member concluded that Arnold was not permanently and totally disabled.

[12] With respect to Arnold's claim that County Line had denied his claim due to bad faith or lack of diligence, the Single Member stated: "While [Arnold's] arguments of bad faith are compelling, the Board members find [County Line's] activities did not reach the level of bad faith." *Id.* at 57. Still, the Single Member also stated that "[Arnold] may bring a claim of bad faith/lack of diligence in regard to the additional treatment that physicians deem appropriate, subject to [County Line's] objections." *Id.* The full Board affirmed the Single Member's award by a vote of four to three. After remand from this Court to address Arnold's lack of diligence claim,[1] the full Board concluded in relevant part as follows:

> the Board members do not find there was an actionable lack of diligence on the part of [County Line] and therefore deny [Arnold's] request for a finding of lack of diligence. However, the Board recognizes that [County Line's] refusal to accept [Arnold's] claim and provide care recommended by physicians the Board finds most credible, did lead to him suffering a higher Permanent Partial Impairment and a later MMI date as a result of the delays in care and treatment.

Appellant's Amended App. Vol. 2, p. 13.

---

[1] The Board's original decision omitted any conclusion regarding Arnold's lack of diligence claim.

## Discussion and Decision

### Standard of Review

In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Christopher R. Brown, D.D.S., Inc. v. Decatur Cnty. Mem. Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). Arnold is appealing from a negative judgment. In an appeal from a negative judgment by the Board, we will neither reweigh the evidence nor judge the credibility of witnesses. *Hill v. Worldmark Corp./Mid Am. Extrusions Corp.*, 651 N.E.2d 785, 786 (Ind. 1995). Rather, we examine the record only to determine whether there is any substantial evidence and reasonable inferences that can be drawn therefrom to support the Board's findings and conclusion. *Id.* Only if the evidence is of a character that reasonable persons would be compelled to reach a conclusion contrary to the decision of the Board will it be overturned. *Id.* In other words, unless the evidence is undisputed and leads inescapably to a result contrary to the Board's finding, it will be affirmed. *Id.* at 787.

### Issue One: Bad Faith/Lack of Diligence

Arnold first contends that the Board's findings contradict its conclusion that County Line did not act with either bad faith or lack of diligence when it denied care and benefits. Arnold points out that the Board found that County Line's "delay" in providing treatment for Arnold was unacceptable and "had a

deleterious effect" on him. Appellant's Amended App. Vol. 2, p. 9. Arnold maintains that,

> [t]he contradiction between the findings of facts and the application of the bad faith and lack of diligence statutes create uncertainty about the standards for bad faith and lack of diligence in future cases and fails to provide the parties with a coherent principle for understanding why these particular actions of [County Line], despite being characterized so negatively, don't meet the undefined threshold. As such, the Board's Award is contrary to the law . . . .

Appellant's Amended Br. at 11. We do not agree.

[15]   Indiana Code section 22-3-4-12.1(b) of the Worker's Compensation Act ("the Act") permits the Board to assess a financial penalty against an entity that is found to have acted with a lack of diligence, in bad faith, or to have committed an independent tort in adjusting or settling a claim. As this Court has explained,

> [i]n the context of the denial of insurance claims, a finding of bad faith requires evidence of a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, or ill will. *Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind. Ct. App. 2001). "Poor judgment and negligence, therefore, do not amount to bad faith; the additional element of conscious wrongdoing must be present." *Id.* A claim of bad faith does not arise simply because an insurance claim is erroneously denied. *Id.*

*Ag One Co-op v. Scott*, 914 N.E.2d 860, 864 (Ind. Ct. App. 2009). And

> to act with a "lack of diligence" is to act without the degree of attention and care required of a person. Stated affirmatively, a lack of diligence is a failure to exercise the attention and care that

a prudent person would exercise. That is, to act with a lack of diligence is to act negligently.

*E. All. Ins. Grp. v. Howell*, 929 N.E.2d 922, 927 (Ind. Ct. App. 2010).

[16] To the extent Arnold contends that County Line acted in bad faith, he cites no evidence of County Line's ill will, and his claim fails. And while the Board found that County Line's delays in handling Arnold's claim had deleterious effects on him, the Board did not find County Line's conduct to constitute an "actionable lack of diligence . . . ." Appellant's Amended App. Vol. 2, p. 13. The Board's vote in this case was a close one. It denied Arnold's claim on this issue by a single vote.

[17] County Line presented evidence that, given Arnold's medical history, it had reasons to question whether his ongoing symptoms were related to the November 2016 work injury. County Line hired multiple physicians to examine Arnold and to provide opinions over the years. Arnold's injuries are, by all accounts, complex. We cannot say that, as a matter of law, County Line acted without due diligence.

[18] Further, Arnold directs us to no authority to support his assertion that the Board must establish a "threshold" standard for a future claim of bad faith or lack of diligence. We are not aware of any such obligation. In any event, should Arnold bring a future claim of bad faith or lack of diligence against County Line, he will have the right to appeal any adverse Board decision.

**Issue Two: Permanent Total Disability ("PTD")**

[19]     Next, Arnold claims that the Board abused its discretion when it concluded that he is not totally and permanently disabled. A claimant who seeks total permanent disability benefits bears the burden of persuasion. *Walker v. State, Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 264 (Ind. 1998). Thus, again, Arnold appeals from a negative judgment, and we will affirm unless the evidence is undisputed and leads inescapably to a result contrary to the Board's conclusion that Arnold is not permanently and totally disabled. *Hill*, 651 N.E.2d at 787.

[20]     As our Supreme Court has explained,

> [t]o carry her burden, an injured claimant generally must establish her "disability," and the total and permanent (as opposed to partial and temporary) nature of that disability. *See K-Mart Corp. v. Morrison*, 609 N.E.2d 17, 29 (Ind. Ct. App. 1993). The term "impairment"[] refers to the injured employee's loss of physical function(s); whereas the term "disability" refers to the injured employee's inability to work. *See Hill*[,] 651 N.E.2d [at] 786 n.1 . . . ; *Talas v. Correct Piping Co.*, 435 N.E.2d 22, 26 (Ind. 1982). To establish a "permanent total disability," it is not necessary that the claimant prove her impairment or loss of bodily function is, or approaches, 100%, because an injured worker may experience a partial impairment and at the same time be unable to engage in reasonable forms of work activities. *Talas*, 435 N.E.2d at 27; *Rockwell Int'l v. Byrd*, 498 N.E.2d 1033, 1039 (Ind. Ct. App. 1986). Rather, the injured worker must simply establish that she cannot obtain or perform "reasonable" types of employment. *Perez v. United States Steel Corp.*, 428 N.E.2d 212, 215-16 (Ind. 1981) (on petition to transfer after second

remand); *Perez v. United States Steel Corp.*, 426 N.E.2d 29, 31 (Ind.1981) (on petition to transfer after first remand).

In determining whether a claimant is entitled to "total permanent disability" and whether the claimant can obtain and perform "reasonable" types of employment, this Court has employed the definitions set out by Ben F. Small in his treatise *Workmen's Compensation Law of Indiana* (1950 & Supp. 1976). Professor Small has emphasized that, while a "total disability to be permanent must be one which so destroys or shatters a workman's wage earning capacities as to leave him unable to resume reasonable types of employment for the remainder of his life," it is not necessary for a claimant to prove "an utter inability to do anything with the remains of his body" for the "believe-it-or-nots demonstrate that even the most hopeless human wrecks have on occasion developed obscure means for obtaining livelihood." *Id.* § 9.4, at 244, cited in *Perez v. United States Steel Corp.*, 172 Ind. App. 242, 245-46, 359 N.E.2d 925, 927-28 (1977).[] Rather, it is sufficient that the worker show that he cannot carry on reasonable types of employment, with the "reasonableness" of the worker's opportunities to be "measured by his physical and mental fitness for them and by their availability." *Id.*; *Perez*, 428 N.E.2d at 215-16; *Perez*, 426 N.E.2d at 31. *See also Rockwell Int'l v. Byrd*, 498 N.E.2d at 1039.

Once plaintiff has established the degree of obvious physical impairment, coupled with other facts such as the claimant's capacity, education, training, or age, and has established that she has attempted unsuccessfully to find work or that it would be futile to search for work in light of her impairment and other characteristics,[] the burden of producing evidence that reasonable employment is regularly and continuously available then rests on the employer.[]

*Walker v. State, Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 264-66 (Ind. 1998).

[21] Arnold maintains that the Board should have awarded him PTD benefits based upon the undisputed evidence regarding his work history, education level (GED), age, and level of impairment, and Roundtree's vocational report, which the Board described as an "uncontroverted expert opinion that [Arnold] can no longer work." Appellant's Amended App. Vol. 2, p. 9. Arnold argues that the Board "fail[ed] to explain why it disregard[ed] 'uncontroverted' expert testimony and the undisputed facts that it enter[ed]" when it concluded that he is not permanently and totally disabled. Appellant's Amended Br. at 13.

[22] First, we note that Arnold does not support his argument on this issue with citations to the record on appeal. *See* Ind. Appellate Rule 46 (A)(8)(a). Second, it is well settled that the Board, as fact-finder, "'is free to accept or reject expert opinion testimony.'" *Hill*, 651 N.E.2d at 787 (quoting *Rork v. Szabo Foods*, 439 N.E.2d 1338, 1341 (Ind. 1982)). While the Board noted that Roundtree's report was "uncontroverted expert opinion," it did not state whether it found the report credible. It merely noted that County Line did not submit a competing expert opinion. Indeed, the Board's conclusion that Arnold is not permanently and totally disabled shows that it did not credit Roundtree's report.

[23] Arnold's argument on appeal focuses only on the Board's findings and evidence in his favor. But the Board also noted Dr. Barrett's opinion that Arnold has "permanent lifting restrictions of no lifting greater than 10 pounds and that it would not be feasible for [Arnold] to return to work *as a heavy equipment operator*." Appellant's Amended App. Vol. 2, p. 8 (emphasis added). That evidence does not preclude other types of work. Indeed, Arnold does not

designate any opinion by a treating physician or independent medical provider that he is unable to perform *any* type of work. Moreover, other than Roundtree's report, Arnold directs us to no evidence that he had tried unsuccessfully to find work or that looking for work would be futile. *See Walker*, 694 N.E.2d at 265. Indeed, at the September 2023 hearing before the Single Member, which was held several months after Roundtree's December 2022 report was issued, Arnold presented no such evidence.

[24] In sum, Arnold's contentions on appeal amount to a request that we reweigh the evidence, which we will not do. The evidence is obviously very close. Again, the Board voted four to three on this issue. But we cannot say that the evidence is undisputed and leads inescapably to a result contrary to the Board's conclusion that Arnold is not permanently and totally disabled. *Hill*, 651 N.E.2d at 787.

[25] Affirmed.[2]


Foley, J., and Felix, J., concur.


ATTORNEY FOR APPELLANT

Brandon E. Hall
Greene & Schultz
Bloomington, Indiana

---

[2] We note that County Line challenged two of the Board's findings on cross-appeal. But County Line stated that we could ignore the cross-appeal if we affirmed the Board. Accordingly, we do not address the cross-appeal.

ATTORNEY FOR APPELLEE

Michael Patrick Dugan
Dugan Wyatt & Czernik LLC
Indianapolis, Indiana